[No. C023677. Third Dist. Mar. 31, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
ALFRED CALDERON, Defendant and Respondent.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stan Cross and J. Robert Jibson, Deputy Attorneys General, for Plaintiff and Appellant.

Alfred Calderon, in pro. per., for Defendant and Respondent.

## OPINION

**NICHOLSON, J.**—In talking with an investigator from the Yolo County Public Defender's Office, defendant implicated himself in a shooting and then asked for an attorney. The investigator contacted the police, apprising them of defendant's involvement and his request for an attorney, and defendant accompanied the investigator to the police department. Without obtaining an attorney for defendant, police advised defendant of his *Miranda*[1] rights. Defendant indicated he understood, signed a waiver, and submitted to a videotaped interview regarding the shooting incident. The trial court suppressed defendant's statements to the police, finding they could be used only for impeachment purposes under *Arizona v. Roberson* (1988) 486 U.S. 675 [108 S.Ct. 2093, 100 L.Ed.2d 704]. The court found defendant had requested counsel, counsel had not been provided, and further interrogation was initiated by police, not defendant. The People appeal. We reverse.

### FACTS

In a case involving charges of attempted murder in a shooting incident, the Yolo County Public Defender's Office represented the alleged perpetrator, Jose Villa. Robert Samaniego, an investigator for the public defender's office, identified defendant Alfred Calderon as a potential witness who might benefit Villa's defense. Samaniego kept Detective Armando Fernandez of the Woodland Police Department informed of his efforts, and Detective Fernandez told Samaniego "as soon as you can locate [defendant], . . . you hand him over to me."

Samaniego eventually located defendant at a friend's apartment. Samaniego showed defendant his badge, stating he was "from the Yolo County Public Defender's office and . . . was investigating the Jose Villa case." He then asked defendant to accompany him to his office to complete the interview. Defendant did so, identifying the public defender's office as the "sheriff's station." In the course of a 17-minute interview, defendant indicated his involvement in the shooting incident.[2] At this point, Samaniego asked if he could tape their interview, and defendant responded he wanted an attorney. Samaniego terminated the interview and contacted the Woodland Police Department.

Detective Fernandez and two other police officers met Samaniego outside the public defender's office and Samaniego related what had happened.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

[2] According to the memorandum of points and authorities accompanying the motion to suppress, during this interview defendant "admitted discharging a firearm which struck one of the [victims] in the head."

Samaniego then transported defendant to the Woodland Police Department. At the police station, Detective Fernandez told defendant they were investigating a shooting and believed he was involved. Fernandez advised defendant of his *Miranda* rights; defendant signed a waiver and submitted to a videotaped interview. Fernandez placed defendant under arrest at the conclusion of the interview.

Defendant subsequently moved to quash his implicating statement to Samaniego and his later statements to police. The trial court found: "[T]he motion to quash the statement made to Robert Samaniego, the Public Defender investigator[,] must be denied. From all of the evidence, I do not find and cannot find, frankly, that the defendant was in custody at the time he gave the statement to Mr. Samaniego. And if he's not in custody, then obviously it makes no difference whether Mr. Samaniego was cooperating with the police or there's a parallel investigation or how we want to characterize the relationship between Samaniego and Fernandez. . . . [¶] Samaniego asked [defendant] whether he would go down to the office. [Defendant] admitted on the stand that he voluntarily agreed to accompany Mr. Samaniego to the office. [Defendant] sat in the front seat of an unmarked, white Ford when he drove down to Mr. Samaniego's office. So there's nothing that would suggest that he was under arrest. [¶] . . . I recognize that [defendant] says he thought he was in the sheriff's department, but there is no reason a reasonable person would come to that conclusion. There's nobody in uniform in that particular area, there's nothing about the building to suggest that it's the police department. [Defendant] didn't know that the building had previously been the site of the Yolo County Sheriff's Department. So the site of the interview itself would not indicate that the defendant is in custody. . . . [¶] For all those reasons, then, the statement made to Mr. Samaniego would not be suppressed. . . . [¶] After reviewing the most recently filed points and authorities, I still find that the U.S. Supreme Court case of Arizona versus Roberson [citation] is the only case that addresses the issue before the Court. In that case, the Supreme Court held that once a defendant has asked for counsel, he cannot be interrogated further, if the police initiate the interrogation. According to the Supreme Court, this is true even if the second officer who conducts the subsequent interrogation does not know that the defendant has invoked his rights. [¶] That holding then dictates that the videotaped statement is inadmissible in the People's case in chief. That does not mean, however, the statement is inadmissible for any purpose. [¶] Based on the evidence in this case, I would find that the statement given to Officer Fernandez was not coerced, the defendant was fully Mirandized, the defendant indicated that he understood his rights, and he unhesitatingly said that he would waive his rights and talk to the police. [¶] Therefore, I find that the statement is

voluntarily made and that statement can be used for impeachment purposes, if the defendant chooses to testify in that particular case."

At a subsequent hearing, the prosecutor stated she was unable to proceed to trial "due to the Court's pretrial ruling." Accordingly, the trial court dismissed the charges against defendant, and this appeal followed.

## DISCUSSION

█ The trial court phrased the underlying issue as follows: "If a police officer learns from a private citizen that a suspect has said he wants to talk to an attorney, is the police officer precluded from interrogating the defendant, even if the police officer Mirandizes the defendant and the defendant says he's willing to talk"? The limited case law on this issue indicates the answer is no.

The trial court expressly found defendant was not in custody during his questioning by Samaniego, and it was during this questioning that defendant invoked his right to counsel. In discussing the right to counsel, the United States Supreme Court has noted: "We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation' . . . . If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect." (*McNeil* v. *Wisconsin* (1991) 501 U.S. 171, 182, fn. 3 [111 S.Ct. 2204, 2211, 115 L.Ed.2d 158, 171]; see also *U. S.* v. *Hines* (9th Cir. 1992) 963 F.2d 255, 256 ["[i]t is well established . . . that the Fifth Amendment right to counsel under *Miranda* does not vest until a defendant is taken into custody."].)

Although this passage in *McNeil* is dicta, we consider it "with deference." (See *Alston* v. *Redman* (3d Cir. 1994) 34 F.3d 1237, 1246.) Moreover, "[t]he antipathy expressed in *McNeil* towards the anticipatory invocation of the *Miranda* rights is consistent with *Miranda*'s underlying principles. The *Miranda* right to counsel is a prophylactic rule that does not operate independent from the danger it seeks to protect against—'the compelling atmosphere inherent in the process of in-custody interrogation'—and the effect that danger can have on a suspect's privilege to avoid compelled self-incrimination. [Citation.] To allow an individual to interpose *Miranda* in a

situation outside the custodial interrogation context would represent an unwarranted extension of *Miranda*'s procedural safeguards, an extension best left to the discretion of the Supreme Court, which devised the *Miranda* safeguards in the first place and which has quite recently expressed disinterest in expanding them. [Citation.]" (*Ibid.*)

Accordingly, it was error to suppress defendant's statements to the police, and we remand this matter for further proceedings in accordance with this opinion.

### DISPOSITION

The trial court's order on the motion to suppress defendant's statements to the Woodland Police Department, and the order of dismissal resulting therefrom, are reversed. The matter is remanded with directions to the superior court to vacate the judgment of dismissal and enter a new and different order denying defendant's motion to suppress.

Sims, Acting P. J., and Scotland, J., concurred.