STATE OF NEBRASKA, APPELLEE,
v. MICHAEL G. THOMAS, APPELLANT.
574 N.W. 2d 542

Filed February 17, 1998.    No. A-97-373.

Michael J. Synek for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Michael G. Thomas was convicted in the district court for Buffalo County of unlawful distribution of a controlled sub-

stance, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Reissue 1995), following his plea of no contest. Thomas was sentenced to 8 to 15 years' imprisonment and ordered to pay restitution in the amount of $750. Thomas appeals his sentence, contending that his attorney provided ineffective assistance of counsel at the sentencing hearing, that his sentence of 8 to 15 years' imprisonment was excessive, and that the restitution order of $750 exceeded that permissible under Neb. Rev. Stat. § 28-427 (Reissue 1995). For the reasons stated below, we affirm.

## II. FACTUAL BACKGROUND

On September 3, 1996, an information was filed charging Thomas with six drug-related crimes. Count I alleged that Thomas had unlawfully distributed methamphetamine on December 8, 1995; count II alleged that he had unlawfully distributed amphetamine on December 16, 1995; and count III alleged that he had unlawfully distributed methamphetamine on February 3, 1996. Counts IV through VI charged him with illegal possession of drugs, namely, cocaine, methamphetamine, and amphetamine.

At an arraignment held on September 25, 1996, Thomas pled not guilty to all six counts. On January 27, 1997, pursuant to a plea agreement, Thomas changed his not guilty plea to count III to a plea of no contest. Under the terms of the plea agreement, the State dismissed the remaining five counts of the information. Generally, the State provided the following factual basis for the plea: After several contacts and two controlled buys in December 1995, a confidential informant (CI), working with police, approached Thomas at his home on February 3, 1996, and purchased a quantity of methamphetamine weighing approximately 1.85 grams. The district court accepted Thomas' plea of no contest and adjudged him guilty. A presentence investigation was ordered.

A sentencing hearing was conducted February 28, 1997. Thomas addressed the court at sentencing, stating that the money he received from the CI, who was a longtime friend, on February 3, 1996, was repayment of a loan of $750 and that Thomas was simply returning the drugs to the CI at that time because the CI had given them to Thomas as collateral for the

loan. To rebut Thomas' statement, the State offered tape recordings of a telephone conversation between Thomas and the CI on January 21, 1996, and of the February 3, 1996, transaction. The State also supplied a transcription of the tape concerning the February 3 transaction.

Regarding the issue of restitution, the State offered depositions of the CI and the participating police officer to show the amounts of money expended during the investigation of the crime of which Thomas was convicted. Thereafter, Thomas testified regarding his recollection of the conversation between him and the CI on February 3, 1996. Arguments were made by the State and the defense. Thereafter, the district court entered a judgment of restitution in favor of the State and against Thomas in the amount of $750 with interest of 6.64 percent and sentenced Thomas to 8 to 15 years' imprisonment. This appeal timely followed.

## III. ANALYSIS

### 1. INEFFECTIVE ASSISTANCE OF COUNSEL

We first address Thomas' assigned error that his attorney provided ineffective assistance of counsel at the sentencing hearing. Thomas claims that his attorney was ineffective for failing to present evidence at the sentencing hearing regarding Thomas' life, character, and previous conduct. Thomas argues that "[p]erhaps" his attorney could have called Thomas, his employer, his father, or his girl friend to speak about him. Brief for appellant at 10. Thomas also claims that his attorney was deficient in failing to request a continuance of the sentencing hearing due to certain media coverage and in failing to refute "unfavorable subjective conclusions and assumptions about [his] respect for the law and attitude toward drugs," id. at 12, contained in the presentence investigation report.

In order to state a claim of ineffective assistance of counsel as violative of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that his or her counsel's performance was deficient and that such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's

deficient performance, the result of the proceeding would have been different. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997); *State v. Massey*, 252 Neb. 426, 562 N.W.2d 542 (1997). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

Claims of ineffective assistance of counsel raised for the first time on direct appeal, as is the case here, do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. See, *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995); *State v. Dawn*, 246 Neb. 384, 519 N.W.2d 249 (1994). An appellate court will not address a matter on direct appeal when the issue has not been raised or ruled on at the trial court level and the matter necessitates an evidentiary hearing. *Dawn, supra.*

The issue of ineffective assistance of counsel was not raised below. In addition, the record before this court is insufficient to adequately review the question of effectiveness of counsel. Any deficiencies of counsel or alleged prejudice to Thomas cannot be determined based on the record before us. Therefore, we do not reach Thomas' claims of ineffective assistance of counsel at sentencing on this direct appeal.

### 2. EXCESSIVE SENTENCE

Next, we address whether Thomas' sentence of 8 to 15 years' incarceration is excessive. A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Schultz*, 252 Neb. 746, 566 N.W.2d 739 (1997); *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Earl, supra*; *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997).

Thomas was convicted of unlawful distribution of a controlled substance, a Class III felony, which carries a sentence of 1 to 20 years' imprisonment, a $25,000 fine, or both. See, Neb. Rev. Stat. § 28-105 (Reissue 1995); § 28-416(1)(a). Thomas concedes that his sentence of 8 to 15 years' imprisonment is within statutory limits.

### (a) Sentencing Judge's Observations

■ Thomas argues that his sentence constitutes an abuse of discretion because "the District Judge effectively called [him] a liar." Brief for appellant at 15. Thomas is referencing the following statement of the district court:

> [I]n all the sentencings I've had, of those individuals who have had a rather casual and nonchalant attitude about drug usage and drug sales, when they have come in for sentencing hearing, I have not heard any of those persons lie to me as blatantly as Mr. Thomas just did.

A sentencing judge may properly consider any type of relevant information, including his own observations of the defendant. *State v. Bridgmon*, 196 Neb. 714, 246 N.W.2d 57 (1976); *State v. Rapp*, 184 Neb. 156, 165 N.W.2d 715 (1969). We conclude that the above statement by the sentencing judge does not indicate prejudicial bias against Thomas. The statement indicates that, based on his own observations, the sentencing judge did not believe Thomas' explanation of the conversation and events of February 3, 1996. We conclude that the district court did not abuse its discretion in this regard.

### (b) Dismissed Charges

Thomas also argues that when sentencing him, the district court improperly considered the dismissed charges, relying on the depositions offered by the State for the limited purpose of showing the amounts of money expended by law enforcement. We note that information regarding the dismissed charges is contained in the presentence investigation report. Furthermore, at the sentencing hearing, Thomas testified regarding the three transactions and provided his explanation for the same. Therefore, the issue before us is whether the district court could consider the dismissed charges, not whether it did so by referring to documents which were not received for that purpose.

■ A sentencing court has broad discretion in the source and type of evidence that it may use in determining the kind and extent of punishment to be imposed within the limits fixed by statute. *State v. Ryan*, 248 Neb. 405, 534 N.W.2d 766 (1995); *State v. Hoffman*, 246 Neb. 265, 517 N.W.2d 618 (1994). The Nebraska Supreme Court has held that a sentencing court in a

noncapital case may consider a defendant's unadjudicated misconduct in determining an appropriate sentence. See, e.g., *State v. Foral*, 236 Neb. 597, 462 N.W.2d 626 (1990); *State v. Suffredini*, 224 Neb. 220, 397 N.W.2d 51 (1986); *State v. Menard*, 199 Neb. 456, 259 N.W.2d 479 (1977); *Bridgmon, supra*; *State v. Rose*, 183 Neb. 809, 164 N.W.2d 646 (1969). In *Rose*, the Supreme Court stated: "It is true that many of the arrests did not lead to a conviction of crime, but they are no less proper to be considered in arriving at the sentence to be imposed." 183 Neb. at 812, 164 N.W.2d at 649. Based on the applicable case law, we, therefore, conclude that the district court's consideration of the dismissed charges was not an abuse of discretion.

### (c) Mitigating Factors

Finally, Thomas argues that the district court failed to consider mitigating factors when rendering sentence. In imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Wilson*, 252 Neb. 637, 564 N.W.2d 241 (1997). Based upon our review of the record, we conclude that the district court did not abuse its discretion in the sentence imposed given the nature of the crime, Thomas' apparent cavalier attitude at sentencing, his prior criminal record, and other relevant circumstances.

### (d) Resolution

Since the sentence imposed was within statutory limits, was not untenable, and did not deprive Thomas of a substantial right or just result, we conclude that the district court did not abuse its discretion concerning the sentence imposed.

### 3. RESTITUTION

Finally, we address Thomas' assigned error that the order of restitution in the amount of $750 was an abuse of discretion because it included money expended by the police in drug transactions for which Thomas was not convicted. Based on the

record, it appears that the restitution order of $750 includes $180 from the December 8, 1995, transaction (dismissed count I); $400 from the December 16, 1995, transaction (dismissed count II); and $170 from the February 3, 1996, transaction, which is the conviction involved in this appeal. Thomas argues that restitution under § 28-427 may be ordered only for law enforcement funds spent during the actual drug purchase leading to the conviction before the court. Generally, an order of restitution will be upheld absent an abuse of discretion. See, *State v. McLain*, 238 Neb. 225, 469 N.W.2d 539 (1991); *State v. Yost*, 235 Neb. 325, 455 N.W.2d 162 (1990); *State v. McMann*, 4 Neb. App. 243, 541 N.W.2d 418 (1995).

### (a) Applicable Statute

Section 28-427 provides, in relevant part:

> Should any person be convicted for violation of this article [Neb. Rev. Stat. §§ 28-401 through 28-445 (Reissue 1995)], in addition to any penalty imposed by the court, the court may order that such person make restitution to any law enforcement agency for reasonable expenditures made in the purchase of any controlled substances from such person or his agent as part of the investigation leading to such conviction.

### (b) Case Law

In making his argument, Thomas asks this court to find the holding in *State v. Rios*, 237 Neb. 232, 465 N.W.2d 611 (1991), controlling. In *Rios*, the defendant delivered cocaine to an undercover informant in exchange for $275 in law enforcement funds. An additional $75 of law enforcement funds was spent in arranging for the purchase. The defendant also made two subsequent sales, costing police an additional $375. The lower court ordered restitution of all of the above expenditures. The Supreme Court held that the plain and ordinary meaning of the phrase "as part of the investigation leading to such conviction" in § 28-247 does not include funds spent in sales subsequent to the one for which the defendant is convicted. The *Rios* court stated that the funds spent for the two subsequent sales "could not have been part of the investigation leading to the conviction," 237 Neb. at 234, 465 N.W.2d at 613, and that therefore,

the defendant could not be ordered to pay restitution for the costs incurred in connection with the subsequent sales. The *Rios* court further held that the $75 expended to arrange the transaction leading to the conviction at hand was a reasonably necessary expense for which restitution could be ordered. We note that the *Rios* case does not address the situation before us, where the restitution ordered includes purchase money connected with two *previous* drug transactions.

Instructive in the case before us is *State v. Holmes*, 221 Neb. 629, 379 N.W.2d 765 (1986). It appears that in *Holmes*, the defendant was convicted of one charge of delivery of cocaine. In addition to a sentence of imprisonment, restitution was ordered in the amount of $6,390. This figure represented the money spent by the Nebraska State Patrol to buy cocaine from the defendant on June 13 and 20, 1982. The *Holmes* court held that restitution of the $6,390 was proper, since it included " 'reasonable expenditures made in the purchase of any controlled substances,' " *id.* at 633, 379 N.W.2d at 768, as required by § 28-427. The *Holmes* court does not specify for which sale the defendant was convicted or how much money was spent by the State Patrol in each drug transaction. However, what is clear is that the court allowed restitution for expenditures relating to a drug sale for which the defendant was not convicted. Given the court's holding in *Rios, supra*, we assume the conviction must have been for the later offense. Therefore, *Holmes* instructs that a defendant may be ordered to pay restitution for money expended to purchase drugs in transactions other than the transaction for which he or she is convicted. However, *Rios* limits the *Holmes* holding to expenses incurred prior to or during the drug transaction for which the defendant is convicted.

### (c) Statutory Language Construction

The idea that restitution can include purchase money for drug transactions occurring prior to the transaction for which the defendant is convicted is supported by the language of § 28-427. In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and where the words of a statute are plain, direct, and unambiguous, no interpretation is necessary. *Rios, supra*. We note

that restitution ordered pursuant to § 28-427 is not considered a criminal penalty, *Holmes, supra,* and, therefore, the proposition that penal statutes must be strictly construed, *State v. Kennedy,* 251 Neb. 337, 557 N.W.2d 33 (1996), is inapplicable. Section 28-427 provides for restitution of "reasonable expenditures" in purchasing drugs as part of an "investigation leading to [a] conviction." The statute does not use more specific language to limit restitution to mean only the money actually "handed" to the drug seller to purchase the drugs in the transaction leading to the conviction. But see, N.Y. Penal Law § 60.27 (McKinney 1997) (limiting restitution in these situations to amount of funds expended in actual purchase of such controlled substance by law enforcement agency); *People v. Ten Eyck,* 146 Misc. 2d 132, 549 N.Y.S.2d 362 (1989). Further, § 28-427 provides for restitution for costs arising during the "investigation" of the offense. This language clearly contemplates that expenses incurred prior to the actual drug transaction are recoverable.

### (d) Application to Present Case

We decline to apply the holding in *State v. Rios,* 237 Neb. 232, 465 N.W.2d 611 (1991), to the case before us and further restrict the application of § 28-427. Applying Nebraska case law and the plain and ordinary meaning of § 28-247 to the situation before us, we conclude that the law enforcement expenses incurred during the controlled buys by the CI from Thomas on December 8 and 16, 1995, were part of the investigation leading to Thomas' conviction for the February 3, 1996, sale. All three transactions were part of an ongoing investigation of Thomas, culminating in the February 3 transaction and Thomas' subsequent arrest. The requirements of § 28-427 were met in the present case. Therefore, we conclude that the district court did not abuse its discretion in the amount of restitution ordered.

### IV. CONCLUSION

Finding no merit to the assigned errors, we affirm.

AFFIRMED.