STATE OF NEBRASKA, APPELLANT, V.
CHARLES E. RELFORD, APPELLEE.

623 N.W. 2d 343

Filed February 27, 2001.   No. A-00-1040.

Tricia A. Freeman, Deputy Sarpy County Attorney, for appellant.

Gregory A. Pivovar, Deputy Sarpy County Public Defender, for appellee.

INBODY, Judge.

## INTRODUCTION

This is the second time that this case has been before this court on appeal from the Sarpy County District Court's sustaining of Charles E. Relford's motion to suppress evidence. See *State v. Relford*, No. A-00-240, 2000 WL 1055413 (Neb. App. Aug. 1, 2000) (not designated for permanent publication). This single-judge review is pursuant to Neb. Rev. Stat. § 29-116 (Cum. Supp. 2000).

## STATEMENT OF FACTS

In the early evening of August 15, 1999, Investigator Francis Gallo and Sgt. Mark Elbert conducted an interview of Relford at

the Bellevue Police Department's investigations offices. At the beginning of the interview, Relford was given the *Miranda* warnings, and he waived his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Following the interview, Relford was placed under arrest and transported to the Sarpy County jail. On August 17, Relford was contacted by law enforcement for a second interview, which was conducted at approximately 2 p.m. Prior to this interview, Relford was advised of his *Miranda* rights, which Relford waived. Relford was then asked if he would be willing to have the interview videotaped, and Relford responded that he would be willing. During this videotaped interview, Relford made various incriminating statements.

On September 27, 1999, an information was filed in Sarpy County District Court charging Relford with first degree murder. Relford pled not guilty to the charged offense and filed a motion to suppress physical evidence and to suppress all the statements made by Relford to law enforcement officers.

A suppression hearing was held on January 20 and 21, 2000. Testifying for the State were Investigator Gallo and Sergeant Elbert; James Miller, the Sarpy County Attorney at the time of the interview; and Sgt. Mark Topil of the Sarpy County Sheriff's Department, who was the day shift supervisor in the jail in August 1999. Relford testified on his own behalf and also called Capt. Daniel D. Williamson, the jail division commander with the Sarpy County sheriff's office.

Captain Williamson testified that while Relford was incarcerated, his telephone privileges were restricted. Sergeant Topil testified that on August 16, 1999, he had contact with Relford while Relford was incarcerated at the Sarpy County jail. Sergeant Topil testified that he told Relford about the telephone restrictions and asked Relford if he wanted to contact a lawyer. According to Sergeant Topil, Relford responded that "he needed the public defender." Sergeant Topil then told Relford that "a public defender would have to be appointed to him by the Court, however, if he wanted to call them, there was the phone, and I would provide the phone number for him." Relford did not ask Sergeant Topil for the telephone number and did not attempt to make a telephone call.

The district court partially granted Relford's motion to suppress, and the State appealed to this court. On appeal, I reversed the district court's partial grant of Relford's motion to suppress; however, I also remanded the cause to the district court for further findings of fact. Upon remand, the district court found that Relford was not denied telephone access to an attorney while incarcerated, but that his statement to law enforcement that he "needed the public defender" was an unequivocal, unambiguous request for counsel and that Relford's statements made after that time should be suppressed. Thus, the court sustained Relford's motion to suppress the statements regarding Relford's August 17, 1999, statements and exhibit 5, a videotape of the August 17, 1999, interview. The State has timely appealed to this court.

## ASSIGNMENTS OF ERROR

On appeal, the State contends that the district court (1) did not sufficiently set forth its factual findings and failed to explain the analysis supporting its decision and (2) erred in concluding that Relford's *Miranda* rights were violated when he asked for an attorney outside of the scope of a custodial interrogation. I specifically note that the district court's finding that Relford was not denied telephone access to an attorney while incarcerated has not been appealed and is not an issue before this court.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Merrill*, 252 Neb. 510, 563 N.W.2d 340 (1997); *State v. Matthews*, 8 Neb. App. 167, 590 N.W.2d 402 (1999); *State v. Beeken*, 7 Neb. App. 438, 585 N.W.2d 865 (1998). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Matthews, supra*; *State v. Beeken, supra*.

## ANALYSIS

*Sufficiency of District Court's Findings.*

■ First, I address the State's argument that the district court did not sufficiently set forth its factual findings and failed to explain the analysis supporting its decision. The Nebraska Supreme Court has directed district courts to articulate in writing or from the bench their general findings when denying or granting a motion to suppress, with the degree of specificity required varying from case to case. *State v. Graham*, 259 Neb. 966, 614 N.W.2d 266 (2000); *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996). Having reviewed the district court's order, I find that the court's order sufficiently sets forth its factual findings and the basis for its decision. Therefore, I find that this assignment of error is without merit.

*Violation of* Miranda.

Next, the State contends that the district court erred in concluding that Relford's *Miranda* rights were violated when he asked for an attorney outside the scope of a custodial interrogation. The seminal case, *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), established concrete constitutional guidelines for law enforcement agencies and courts to follow regarding the admissibility in evidence of any statement given during custodial interrogation of a suspect. The U.S. Supreme Court recently reaffirmed that the dictates set forth in the *Miranda* decision constitute a constitutional rule applicable to state courts. See *Dickerson v. United States*, 530 U.S. 428, 120 S. Ct. 2326, 147 L. Ed. 2d 405 (2000).

There is no dispute that Relford was in custody when he made the statement that he "needed the public defender." There is also no dispute that Relford was not subject to interrogation at that time. Assuming, without deciding, that Relford's statement that he "needed the public defender" was an unambiguous and unequivocal request for counsel, the question that I must decide is whether Relford could invoke his *Miranda* right to counsel prior to a custodial interrogation. It does not appear that this issue has been directly answered by the U.S. Supreme Court. However, the Court has strongly suggested that a defendant cannot anticipatorily invoke his *Miranda* right to counsel.

In *McNeil v. Wisconsin*, 501 U.S. 171, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991), the defendant argued that an invocation of his Sixth Amendment right to counsel also acted as an invocation of his *Miranda* right to counsel. In holding that an invocation of a defendant's Sixth Amendment right to counsel does not operate as a *Miranda* invocation of the right to counsel, the Supreme Court stated in a footnote:

> We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"—which a preliminary hearing will not always, or even usually, involve[.] [Citations omitted.] If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

501 U.S. at 182 n.3. See, also, *Edwards v. Arizona*, 451 U.S. 477, 485-86, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) ("[t]he Fifth Amendment right identified in *Miranda* is the right to have counsel present at any custodial interrogation. Absent such interrogation, there would have been no infringement of the right that Edwards invoked and there would be no occasion to determine whether there had been a valid waiver"); *Rhode Island v. Innis*, 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980) (holding that *Miranda* interests are in place when one is subjected to "express questioning or its functional equivalent"). Additionally, in *Innis*, the Supreme Court stated that "[t]he concern of the Court in *Miranda* was that the 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." 446 U.S. at 299, quoting *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

See, also, *Illinois v. Perkins*, 496 U.S. 292, 297, 110 S. Ct. 2394, 110 L. Ed. 2d 243 (1990) ("[i]t is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation").

Many state courts which have considered the issue have relied on the language in *McNeil v. Wisconsin, supra*, to hold that one cannot anticipatorily invoke the *Miranda* right to counsel prior to custodial interrogation. *People v. Villalobos*, 193 Ill. 2d 229, 737 N.E.2d 639, 250 Ill. Dec. 17 (2000) (in order to invoke *Miranda* right to counsel, individual must be both in custody and subject to interrogation or under imminent threat of interrogation); *Marr v. State*, 134 Md. App. 152, 759 A.2d 327 (2000) (appellant did not validly invoke Fifth Amendment right to counsel because invocation by counsel occurred outside of context of custodial interrogation); *People v. Avila*, 75 Cal. App. 4th 416, 423, 89 Cal. Rptr. 2d 320, 325 (1999) ("[a]llowing an anticipatory invocation of the *Miranda* right to counsel would extend an accused's privilege against self-incrimination far beyond the intent of *Miranda* and its progeny"); *Sauerheber v. State*, 698 N.E.2d 796, 802 (Ind. 1998) ("[*McNeil*] strongly suggests that the rights under *Miranda* and *Edwards* do not extend to permit anticipatory requests for counsel to preclude waiver at the time interrogation begins"); *People v. Calderon*, 54 Cal. App. 4th 766, 63 Cal. Rptr. 2d 104 (1997); *Sapp v. State*, 690 So. 2d 581, 585 (Fla. 1997), *cert. denied* 522 U.S. 840, 118 S. Ct. 116, 139 L. Ed. 2d 69 ("*Miranda*'s safeguards were intended to protect the Fifth Amendment right against self-incrimination by countering the compulsion that inheres in *custodial interrogation*"); *State v. Bradshaw*, 193 W. Va. 519, 530, 457 S.E.2d 456, 467 (1995), *cert. denied* 516 U.S. 872, 116 S. Ct. 196, 133 L. Ed. 2d 131 ("the *Miranda* right to counsel has no applicability outside the context of custodial interrogation. Therefore, until the defendant was taken into custody, any effort on his part to invoke his *Miranda* rights was, legally speaking, an empty gesture"); *State v. Warness*, 77 Wash. App. 636, 641, 893 P.2d 665, 668 (1995) ("[t]he need for *Miranda* protection does not exist except in a custodial interrogation situation. The right cannot be invoked before it exists"); *Com. v. Morgan*, 416 Pa. Super. 145, 610 A.2d

1013 (1992) (defendant could not assert Fifth Amendment right to counsel outside context of custodial interrogation).

In *People v. Villalobos, supra*, the defendant ostensibly invoked his *Miranda* right to counsel by filing a form at a bond hearing held on November 14, 1994. The form stated that the defendant would not participate in " 'any questioning, identification process or other procedures on any case or matter whatsoever' " without his counsel present. 193 Ill. 2d at 231, 737 N.E.2d at 641, 250 Ill. Dec. at 19. On November 16, after being advised of his *Miranda* rights and waiving them in writing, the defendant provided a written statement in which he confessed to the shooting. The defendant filed a motion to suppress his statement, which was denied, and following a trial, the defendant was found guilty of murder. On appeal, the defendant argued that his statement should have been suppressed because he previously invoked his *Miranda* right to counsel by filing the appearance form at his bond hearing. The court stated:

> It is not surprising that virtually every Supreme Court opinion involving *Miranda* has used the phrase "custodial interrogation." It is custodial interrogation with which *Miranda* was concerned. It is the right to an attorney *during custodial interrogation* that *Miranda* and its progeny protects. That right does not exist outside the context of custodial interrogation. One cannot invoke a right that does not yet exist. While in court on a bond hearing, a defendant is not subject to interrogation, and the need for *Miranda* is not yet present. . . . Absent the interplay of custody and interrogation, an individual's privilege against self-incrimination is not threatened.

(Emphasis in original.) *People v. Villalobos*, 193 Ill. 2d 229, 239, 737 N.E.2d 639, 645, 250 Ill. Dec. 17, 23 (2000). The court went on to hold:

> Stretching *Miranda* to allow anticipatory invocations of the right to counsel would extend *Miranda* far beyond its boundaries and upset the very balance that *Miranda* sought to protect—the balance between effective law enforcement and protection of individual rights. In order to invoke the *Miranda* right to counsel, an individual must be both in

custody and subject to interrogation or under imminent threat of interrogation.

193 Ill. 2d at 241-42, 737 N.E.2d at 646, 250 Ill. Dec. at 24.

Further, relying on *McNeil v. Wisconsin*, 501 U.S. 171, 111 S. Ct. 2204, 115 L. Ed. 2d 158 (1991), an overwhelming number of federal courts have also held that a defendant cannot invoke his *Miranda* rights outside the context of custodial interrogation. *U.S. v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998), *cert. denied* 525 U.S. 911, 119 S. Ct. 255, 142 L. Ed. 2d 210 ("[w]e do not suggest that a person can invoke his *Miranda* rights anticipatorily in any situation, i.e., in a context other than custodial interrogation, as the [U.S. Supreme] Court cautioned in *McNeil*"); *U.S. v. Grimes*, 142 F.3d 1342, 1348 (11th Cir. 1998) ("*Miranda* rights may be invoked only during custodial interrogation or when interrogation is imminent"); *U.S. v. LaGrone*, 43 F.3d 332 (7th Cir. 1994); *U.S. v. Thompson*, 35 F.3d 100, 104 (2d Cir. 1994) ("[the defendant's] filing of the [notice of appearance] did not occur in the context of custodial interrogation"); *Alston v. Redman*, 34 F.3d 1237, 1244 (3d Cir. 1994) ("[b]ecause the presence of both a custodial setting and official interrogation is required to trigger the *Miranda* right-to-counsel prophylactic, absent one or the other, *Miranda* is not implicated" (emphasis omitted)); *U.S. v. Wright*, 962 F.2d 953, 956 (9th Cir. 1992) ("[t]o extend *Miranda-Edwards* protection as [the defendant] urges would, on the other hand, make it virtually impossible for any defendant charged with one crime ever to be questioned about unrelated criminal activity if, the first time in court on the first offense charged, he asked for counsel to be present at future interviews. This would not serve the prophylactic purposes of *Miranda*"); *U.S. v. Cooper*, 85 F. Supp. 2d 1, 23 (D.D.C. 2000) ("[t]he footnote [in *McNeil*] strongly suggests, although not definitively, that a request for counsel under *Miranda* must be made within the custodial context and not at arraignment or other such proceedings"); *U.S. v. Barnett*, 814 F. Supp. 1449, 1454 (D. Alaska 1992) (finding that request for counsel at grand jury proceeding does not constitute invocation of right to counsel under *Miranda-Edwards* because court "assume[s] that the dicta in *McNeil* accurately predicts that the United States Supreme Court will hold that an accused cannot invoke his Fifth

Amendment right to counsel until he is taken into custody, and prior to interrogation, warned of those rights").

■ I agree with the majority of courts that have considered the issue and now hold that the *Miranda* right to counsel cannot be anticipatorily invoked prior to custodial interrogation. In order to invoke the *Miranda* right to counsel, an individual must be both in custody and subject to interrogation or under imminent threat of interrogation.

Applied to the instant case, on August 15, 1999, law enforcement officers conducted an interrogation of Relford. Following the conclusion of this interrogation, Relford was placed under arrest and was held at the Sarpy County jail. On August 16, while in custody, Relford had contact with Sergeant Topil, who told Relford about the telephone restrictions and asked Relford if he wanted to contact a lawyer. According to Sergeant Topil, Relford responded that "he needed the public defender." The next interrogation of Relford was on August 17, at approximately 2 p.m. Even assuming for the purposes of appeal that Relford's statement that he "needed the public defender" was an unambiguous and unequivocal request for counsel, this statement was made after the conclusion of one interrogation and was not made either in the context of the second custodial interrogation or when the second custodial interrogation was imminent. Therefore, I find that Relford's statement did not act as an effective invocation of his *Miranda* right to counsel because Relford was not subject to custodial interrogation when he attempted to invoke his *Miranda* right.

## CONCLUSION

Having determined that the *Miranda* right to counsel cannot be invoked anticipatorily and that Relford's statement that he "needed the public defender" was not made during a custodial interrogation or when interrogation was imminent, the district court's order suppressing Relford's August 17, 1999, statements and exhibit 5 (a videotape of the August 17 interview) is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.