MARY M. VELEHRADSKY, APPELLEE, V.
JAMES J. VELEHRADSKY, APPELLANT.
688 N.W.2d 626

Filed November 2, 2004. No. A-03-1338.

Avis R. Andrews for appellant.

Michael B. Lustgarten, of Lustgarten & Roberts, P.C., L.L.O., for appellee.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

James J. Velehradsky appeals from the decision of the district court for Douglas County, Nebraska, on Mary M. Velehradsky's petition for a decree of dissolution.

## FACTUAL AND PROCEDURAL BACKGROUND

James and Mary were married on September 30, 1977. The parties have two children: Stacie, born December 28, 1986, and Lisa, born June 22, 1988. Mary filed a petition for dissolution of marriage on October 15, 2002, and a decree dissolving the marriage was entered on October 22, 2003. The trial court awarded custody of the two minor children to Mary, subject to James' right of "reasonable and liberal visitation," and ordered James to pay monthly child support of $369 for two children and $252 for one child.

At the time of the hearing on August 28, 2003, Mary was employed with a Veterans Affairs medical center as a public affairs officer. She has been working for the Veterans Affairs medical center since January 1971. She testified that her salary at that time was approximately $60,000 per year. James was employed in the area of carpentry and construction until 1997, when he sustained a workers' compensation injury. He has not worked since that time. In 2000, James settled his workers' compensation claim for $18,000 and had to pay around $7,000 in expenses and fees, leaving him with a net settlement of $11,000.

On October 15, 2002, Mary filed a petition for dissolution, and on December 23, the trial court entered a temporary order granting the parties joint custody of the two children, with Mary as the "primary possessory parent." Mary was awarded temporary possession of the family residence in Omaha, and James was awarded temporary possession of a cabin in Waterloo. On February 12, 2003, Mary filed a certificate of readiness, to which James objected. That objection was overruled, and trial was set for June 16. James then filed a motion to continue, alleging that discovery was not complete and that more time was needed to obtain information as to his medical condition and his ability to obtain gainful employment. On June 9, notice was filed that trial was rescheduled for August 28.

On July 22, 2003, James' counsel filed a motion for leave to withdraw, which the court approved in an order filed August 5. On August 22, James moved for a continuance, alleging that discovery was not complete, that medical records contained misstatements of facts, that the workers' compensation issue had not been resolved, and that he was unable to obtain counsel. At a hearing on August 27, the court overruled the motion to continue, and trial was held on August 28. James appeared pro se at both the hearing and the trial. In its October 22 order, the court granted the dissolution, divided the parties' property, and awarded Mary sole custody of the children, subject to James' right of liberal and reasonable visitation. James filed a motion for new trial on October 31 and again appeared pro se at the hearing on that motion. The court overruled the motion. James appeals with the assistance of counsel.

## ASSIGNMENTS OF ERROR

James' assignments of errors may be reduced to five general assertions, which allege that the trial court erred (1) in failing to grant his motion for continuance, (2) in failing to grant specific visitation, (3) in determining child support, (4) in failing to divide the property equitably, and (5) by the judge's injecting himself into the trial.

## STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there

has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. *Longo v. Longo,* 266 Neb. 171, 663 N.W.2d 604 (2003).

 In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. *McGuire v. McGuire,* 11 Neb. App. 433, 652 N.W.2d 293 (2002). However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

 A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Paulsen v. Paulsen,* 11 Neb. App. 362, 650 N.W.2d 497 (2002).

## ANALYSIS

 James asserts that the trial court erred in overruling his motion for continuance. An application for continuance must be in writing and supported by an affidavit which contains factual allegations demonstrating good cause or sufficient reason necessitating postponement of proceedings. *Williams v. Gould, Inc.,* 232 Neb. 862, 443 N.W.2d 577 (1989). See Neb. Rev. Stat. § 25-1148 (Reissue 1995). A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Adrian v. Adrian,* 249 Neb. 53, 541 N.W.2d 388 (1995).

In *Weiss v. Weiss,* 260 Neb. 1015, 620 N.W.2d 744 (2001), Gary Weiss appealed from an order of the district court denying his motion for new trial following a decree dissolving his marriage and awarding custody of the parties' child to Amy Weiss. The issue on appeal was "whether the district court erred in denying [Gary's] pro se motion for a continuance filed 10 days after his attorney was given leave to withdraw from the case and 16 days prior to the commencement of trial." *Id.* at 1016, 620 N.W.2d at 745.

On September 18, 1998, Amy filed a petition for dissolution. Trial was set for September 20, 1999; however, Gary requested a change in the date because it was set to commence on a religious holiday. The court moved the trial to September 16. On August 18, Gary's counsel filed a motion to withdraw from the case, which motion was granted. Due to his inability to obtain alternate counsel, Gary filed a motion for continuance on August 30. The motion was heard on September 16, with Gary appearing pro se and outlining in detail his inability to obtain new counsel. The trial court denied the motion to continue, and trial began immediately thereafter with Gary appearing pro se. Amy was awarded custody of the parties' child, and Gary was ordered to pay child support. Gary filed a motion for new trial, which was overruled. He then timely appealed.

■ The Nebraska Supreme Court in *Weiss v. Weiss, supra*, found that Gary's pro se motion for continuance was in substantial compliance with § 25-1148. The *Weiss* court used the factors set forth in *Adrian v. Adrian, supra*, to determine whether the trial court's denial of a motion for continuance was an abuse of discretion. The three analytical factors set forth in *Adrian* and restated in *Weiss* are (1) the number of continuances granted to the moving party, (2) the importance of the issue presented in the matter, and (3) whether the continuance being sought was for a frivolous reason or a dilatory motive.

The *Weiss* court, pursuant to its de novo review, used the factors to analyze the circumstances of the case and found that under the first factor, there were no continuances, either requested or granted, prior to Gary's motion for continuance filed on August 30, 1999. Under the second factor, the court found, as in *Adrian*, that *Weiss* involved the constitutionally protected relationship between parent and child. The *Weiss* court stated: "While there is no recognized right to counsel in marriage dissolution proceedings, it is certainly understandable that a parent untrained in the law would desire and benefit greatly from legal representation in a proceeding in which his custody rights will be adjudicated." 260 Neb. at 1020, 620 N.W.2d at 747. Under the third factor, the court determined that Gary had no intent to delay the proceedings unnecessarily and that the record reflected he acted promptly and diligently in attempting to secure

new counsel, requesting a continuance only after his efforts proved unsuccessful. Thus, the Supreme Court found that the district court had abused its discretion in denying Gary's motion for continuance.

In the present case, on July 22, 2003, James' counsel filed a motion for leave to withdraw from the case due to "a breakdown in communication between client and counsel as to the prosecution of the case." The court approved the withdrawal in an order filed August 5. James then filed a pro se motion for continuance on August 22, 6 days before the scheduled trial. In James' motion, he alleged that discovery was not complete, that he recently discovered that the medical records of a potential expert witness concerning James' disability contained misstatements of facts, that his workers' compensation case was not resolved, and that he was unable to retain counsel at that time. Although James did not file an affidavit in support of the motion, the failure to comply with the provisions of § 25-1148 is but a factor to be considered in determining whether a trial court abused its discretion in denying a continuance. *State v. Matthews*, 8 Neb. App. 167, 590 N.W.2d 402 (1999).

A hearing on the motion was held on August 27, 1999, the day before trial was scheduled to begin. At the hearing, the trial court stated: "I don't know of any reason why we can't have a trial tomorrow afternoon. This has been set since June, and you knew back in the middle of July that your attorney wanted out." James stated that he had contacted another attorney who was interested but she "said this was too short a time to prepare for trial, and she was also busy tomorrow and wouldn't be able to make it." The court suggested that he contact "some other one between now and tomorrow," and James responded that he did not have any money to pay an attorney. The court stated:

> Then there's no sense in continuing it until you get an attorney because you're not going to be able to get one evidently. . . . [A]t this last minute and with this, you know, re[ve]lation by you that you don't have any money and can't afford an attorney, I can't keep putting this off.

The court also found that the workers' compensation settlement was in 2000 and that the workers' compensation case had been

sitting for 3 years. Therefore, the court overruled the motion for continuance.

In applying the factors set forth in *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995), to the present case, under the first factor—number of continuances previously granted—the record reflects that James' counsel filed a motion for continuance on May 29, 2003. That motion requested a continuance because discovery was not complete, additional time was needed to obtain information regarding James' medical condition as well as his ability to obtain gainful employment, and there were pending workers' compensation and Social Security claims relevant to issues of income for purposes of alimony and child support. The trial court granted this motion and continued the trial to August 28 from its initial date of June 16. Even though the district court in *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001), had not previously granted a continuance, in *Adrian v. Adrian*, 249 Neb. at 59, 541 N.W.2d at 392, the district court had granted two continuances and the Supreme Court still found that it was an abuse of discretion to deny the motion for continuance due to the fact that there was no "discernible intent" on the part of the petitioner to unnecessarily delay the proceedings.

As to the second *Adrian* factor—analyzing the importance of the issues—the instant case involves the constitutionally protected relationship between parent and child, as did *Weiss v. Weiss, supra,* and *Adrian v. Adrian, supra.* Here, Mary was awarded sole custody of the parties' two children, subject to James' right of reasonable and liberal visitation. No specific schedule for visitation was set, despite Mary's testimony that the parties could not communicate regarding the children without getting into arguments and that during mediation, the parties could not come to an agreement on visitation dates and times. James stated in his answers to interrogatories that he wanted joint legal custody of the children as well as primary physical custody. However, James' chances of obtaining such were greatly diminished by his self-representation, as evidenced by the record.

Further, although such issues do not rise to the level of the constitutionally protected relationship of parent and child, there were other important issues in this case affected by the court's failure to grant the continuance. When the court determined

James' child support, it used earning capacity as a basis for its initial determination. However, insufficient evidence was presented to establish that through reasonable effort, James was capable of realizing the earning capacity the court assigned to him. The only evidence of earning capacity adduced was Mary's testimony that she "believe[d]" James was employable because he "has done other physical work around the house . . . and I think that he could find something, either light duty or even in another field that isn't quite as physical using his same skills and abilities." However, James testified that he was not capable of working an 8-hour day and that he did not even know if jobs paying $9 per hour were available. Despite the lack of evidence, the court reasoned as follows:

> THE COURT: Well, you can go to school and find employment, but you can work at it. It doesn't say that you're disabled or have such a disability — I think you mentioned a 5 percent in total disability, but that doesn't say that you can't go find some type of work that will pay you something, somewhere around $8.00 to $10.00 an hour or something, does it?
>
> [James]: There's a provision in the Worker's Compensation Act called the second injury fund, which requires that any next employer know the condition of my previous injuries, and that is still questionable because of the problems we've had with the medical and the doctors all the way through this thing.
>
> THE COURT: All right. But there's nothing to say that you can't go do some work, right?
>
> [James]: If I do —
>
> THE COURT: Whether it's a convenient store or —
>
> [James]: Yeah. If I do, the next employer —
>
> THE COURT: Well, you're not doing heavy lifting or something. It appears to me you could move around to a certain extent. You may not be able to stand for long periods of time or sit for long periods of time. It appears to me there must be some work out there that you could do that pays [$]7.50 to $10.00 an hour.
>
> [James]: That's what Vocational Rehabilitation is supposed to determine, and they haven't done it.

THE COURT: Okay. But there's nothing to say you can't go to some vocational specialist on your own and then hope that you get reimbursed through Worker's Comp. or whatever.

. . . .

THE COURT: Without going to college, you're not going to get evidently $35,000.00 a year, right? And [t]hat would be commensurate with what you were making before, right? There's no telling that if you went to college you would get $35,000.00 a year, but you could go get a job today and get $7.00 or $8.00 an hour, right?

[James]: Possibly.

THE COURT: Well, there are jobs out there, right?

[James]: Well, as far as I know there's jobs out there.

THE COURT: You could — there's nothing from a doctor saying that you couldn't go to work for, you know, a convenient store or, you know, some type of — that doesn't require manual labor so to speak?

[James]: Right.

THE COURT: Right? So I've got to — like I said, I've got to assess some type of hourly wage based on what you can do or have a potential to do at this point. They're not looking at having you pay what you would have paid seven years ago.

So do you have a problem with me assigning you, say, an an [sic] hourly wage of, like, $9.00 an hour or something like that?

[James]: I don't know if it's available. I don't know.

THE COURT: Well, see, I have to put a number — if I was to give you a number, let's say it's $9.00 an hour. And if you go out there and say I can't do this, you can come in and ask that it be modified. Do you understand what I'm saying?

[James]: Right.

. . . .

THE COURT: You know, and at this point I have nothing here that says you can't, so what I do is just assess an hourly wage of, like, $9.00 an hour because you do have skills.

[James]: But you're basing that on a 40-hour week?

THE COURT: Well, I'll base it on 35 hours a week.

[James]: Because I know I can't do eight hours at a time. I can't do it.

THE COURT: But you could do, say, like five or six hours, six days a week.

[James]: All right. Go for it. Whatever.

It is clear from the record that the court, in calculating child support, had no evidentiary basis for imputing an income for James at a rate of $9 per hour for a 35-hour workweek. And, the court, in effect, "negotiated" with James for a wage and the number of hours per week. Had the court granted the continuance, James would have at least had the opportunity to obtain an attorney who could take an active role in providing some evidentiary basis for James' earning capacity, instead of the trial judge merely bargaining for a number, as occurred here. In addition to the issue of James' ability to work and at what level of earnings, these parties had a substantial marital estate.

█ The net marital estate was worth over $200,000, not including Mary's Civil Service Retirement System (CSRS), which would pay her $2,352 per month if she retired at the age of 51, her age at the time of trial. The present value of the CSRS was not calculated—an important fact on issues of property division and alimony, given James' claim of being unable to work. Mary began accumulating the CSRS on January 11, 1971, about 6½ years before the parties were married. Thus, most of the CSRS was accumulated during the parties' 26-year marriage and should have been considered marital property and included in the estate. See Neb. Rev. Stat. § 42-366(8) (Reissue 1998) (court shall include as part of marital estate, for purposes of division of property at time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested). The issues associated with the division of retirement plans are often complex matters, especially when valuing and dividing benefits such as Mary's CSRS. It is clear from the record that James did not have the requisite knowledge to present evidence allowing for an appropriate division of this significant asset largely accumulated during the marriage, and he would have benefited from the opportunity to obtain an attorney for such purpose. The division of the marital property and the

CSRS were especially important to James, because he had not worked since 1997 and because it was unclear what type of work he could actually perform, leaving his future income in doubt. Thus, we conclude that there were several important and complicated issues at stake in settling this marital estate of significant size. In fact, the trial court's assumption that James would not be able to get an attorney because of a lack of cash is probably incorrect given the size of the marital estate.

Finally, we look to whether the continuance was being sought for a frivolous reason or whether James had a dilatory motive. James' counsel filed a motion for leave to withdraw from the case just over a month prior to trial due to "a breakdown in communication between client and counsel as to the prosecution of the case." However, the court did not file an order granting that motion until August 5, 2003, 2 weeks after the motion was filed. Seventeen days later, James filed his pro se motion to continue, representing that he was unable to obtain substitute counsel. Although James was aware over a month before trial that his attorney intended to withdraw, we find that James did not have a dilatory motive in waiting until 6 days before trial to file a motion to continue, given that he had made efforts to secure substitute counsel. At trial, James stated that he had contacted another attorney but she told him that it was "too short a time to prepare for trial" and that she could not make it to trial the next day due to scheduling conflicts. Additionally, James alleged that he had an unresolved workers' compensation issue on appeal and that a decision on that appeal was likely to be made within 30 days of August 29. There is no evidence that James was trying to delay the proceedings unnecessarily.

When James' motion to continue was denied, he was "thrust into the unenviable position of defending his own interests in a complex dissolution proceeding without the assistance of counsel. The record clearly reflects the understandable fact that he was ill-prepared for this task and was prejudiced thereby in attempting to present evidence on his behalf." See *Weiss v. Weiss*, 260 Neb. 1015, 1021, 620 N.W.2d 744, 748 (2001). In *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995), the Supreme Court reversed our decision, where we held that the trial court, in a dissolution decree modification proceeding, did not abuse its

discretion in denying the petitioner's motion for a continuance, which she requested in order to attend a class to complete her nursing degree. See *Adrian v. Adrian*, No. A-94-693, 1995 WL 49299 (Neb. App. Feb. 7, 1995) (not designated for permanent publication). The Supreme Court found that the trial court had abused its discretion in denying such motion, because the denial was "clearly untenable, unfairly depriving [the petitioner] of a substantial right and a fair trial." *Adrian v. Adrian*, 249 Neb. at 59, 541 N.W.2d at 391. In the same vein, we find that the trial court abused its discretion in denying James' pro se motion for continuance, because the denial unfairly deprived James of a substantial right and a fair trial.

## CONCLUSION

Having determined the dispositive issue, we need not address James' other assignments of error. We reverse the decree of dissolution and remand the matter to the district court for a new trial. Nothing we say here prevents the trial court from imposing strict time limits and conditions for retention of counsel, so that this matter proceeds expeditiously.

REVERSED AND REMANDED FOR A NEW TRIAL.