IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STORM V. BENNETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CHRISTOPHER STORM, APPELLEE,

V.

SARAH BENNETT, APPELLANT.

Filed June 23, 2020.    No. A-19-961.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Sarah Bennett, pro se.

Edith T. Peebles, of Brodkey, Cuddigan, Peebles, Belmont & Line, L.L.P., for appellee.

PIRTLE, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

Sarah Bennett appeals the decision of the district court for Douglas County denying her request to modify custody of her minor daughter and granting Christopher Storm's request to require Bennett's visitation be supervised. For the following reasons, we affirm.

### BACKGROUND

Bennett and Storm are the biological parents of Ruth, born in 2013. A decree of paternity was entered in June 2016 which awarded Storm legal and physical custody of Ruth subject to Bennett's parenting time and ordered Bennett to pay child support. In March 2017, Bennett filed a complaint seeking to modify the child support provisions of the decree. She filed several amended complaints, the operative one having been filed in May 2018.

In this amended complaint, Bennett alleged that Storm denied her parenting time from July 2016 until February 2017 and again from June until December. She also asserted that Storm failed

to notify her of any medical or educational decisions since the parenting plan was established, that Storm was emotionally damaging Ruth by insisting that Bennett was a criminal, that Storm falsely accused Bennett of using drugs and used that claim to slander and defame her to the Iowa Department of Human Services (DHS), and that Storm frequently worked evening jobs and Ruth should be with a parent when Storm was unavailable. She requested that the court grant her full legal and physical custody of Ruth and that Storm be required "to pay his own attorney fees."

In response, Storm filed a "cross-complaint" in which he alleged that there had been a material change in circumstances since the decree was entered, including: a notice of child abuse assessment was declared to be founded by the Iowa DHS in July 2017 where Bennett was found to have failed to provide proper supervision and denied critical care for Ruth; Bennett was placed on the Iowa Central Abuse Registry by the DHS; Iowa DHS found that Bennett had significant mental health issues that impacted her ability to parent; Iowa DHS removed Bennett's younger son from her custody; and since July 2017, Iowa DHS had provided supervised visitation between Bennett and Ruth. Storm further alleged that Bennett's mental health condition is such that it was not in Ruth's best interests to have unsupervised visitation with her. He asked that the court suspend Bennett's parenting time and require any parenting time to be supervised and for attorney fees.

Bennett filed an answer to Storm's counterclaim, requesting that it be dismissed and that she be awarded full physical and legal custody of Ruth. The court held a trial on Bennett's amended complaint and Storm's amended counterclaim across 3 separate days in June, August, and September 2019. Bennett proceeded pro se, and Storm was represented by counsel.

Prior to the start of trial, Bennett informed the court that she had filed a motion to continue trial 2 days earlier because her witness was not available due to a death in the family. Storm's counsel indicated that she received a handwritten notification from Bennett the day prior to trial stating that she planned to collect witness affidavits from out-of-town family, but argued that these affidavits would be inadmissible. The court denied Bennett's motion, finding that it was untimely, that the matter had already been continued at least once, and that trial had been scheduled for 6 to 8 weeks.

Bennett did not testify in her own behalf in her case in chief, but she did adduce testimony from her landlord who testified that Bennett had struggled with financial issues in the past, but she made amends and had turned herself around. Bennett also adduced testimony from Storm. He admitted that there was a hearing before a district court referee in July and August 2017 and that he was found to be in contempt of the decree. According to the referee's report, both Bennett and Storm were found to be in contempt of the decree in August 2017, Storm for withholding parenting time and Bennett for failing to pay child support.

Storm further testified that in June 2017 he was told by an Iowa DHS employee that she was removing Bennett's subsequently born son from her custody and that he could be charged with neglect if he allowed Ruth to have unsupervised visitation with Bennett. Storm informed the court that after the decree was entered, Bennett told him that she was moving to Chicago to get married. Storm denied failing to notify Bennett of Ruth's educational or medical decisions, or alienating Ruth from Bennett. He expressed concerns regarding Bennett's ability to care for Ruth due to her mental health issues.

In addition to witness testimony, Bennett presented various exhibits to the court. As relevant to her appeal, exhibit 8 was a report from the Iowa DHS which allegedly confirmed that Bennett was not on the Iowa Central Abuse Registry. However, exhibit 8 was not received due to lack of foundation. Exhibit 12 was a letter from Bennett's psychologist written in August 2017 which stated that Bennett was a loving mother and exercised sound judgment; however, objections based on hearsay and foundation were sustained and the exhibit was not received. Exhibits 56 and 57 were received into evidence and were letters from consulting health professionals to Bennett's referring physician.

After Bennett rested her case, Storm presented evidence in support of his amended counterclaim. He provided testimony from witnesses to support his concerns about Bennett's parenting time with Ruth. A representative of the property management company of Bennett's apartment testified that there were numerous times where Bennett failed to pay rent. The company also had a protection order on file, which was filed by Bennett against a male individual, who she asserted strangled her. The company also had records of a well-check being performed for one of Bennett's children.

One of Bennett's previous neighbors testified that she heard fighting through the walls of Bennett's apartment, smelled marijuana emanating from it, and saw drug paraphernalia in it. The neighbor also testified that the police were at Bennett's apartment numerous times to check on the safety of her children. The neighbor further informed the court that in February 2018, Bennett was arrested for domestic assault against the father of one of her children. There was an additional incident in which Bennett was crawling on the ground, barking like a dog, and the police had to be called.

Ruth's caretaker testified that Ruth had breakdowns when she had to leave with Bennett. The caretaker indicated that from July 2016 until February 2017, someone from the Nebraska Department of Health and Human Services would pick up Ruth from her care because the Department was providing supervised visitations with Bennett and her son. Ruth's caretaker also stated that Ruth informed her a man was sleeping in her bed at Bennett's apartment and described an incident in which Bennett dressed as a clown and ate grass and dirt.

Storm testified in his own behalf. He stated there were multiple periods of time where Bennett either had supervised visitations with Ruth or did not have visits at all. From June 2017 until December 2017, Iowa DHS was conducting supervised visits between Bennett and her other children. This was the result of a home visit performed by Iowa DHS which resulted in Bennett's son being removed from her custody. A worker from Iowa DHS told him that he could be charged with neglect if he allowed Bennett to have unsupervised visitations with Ruth. Storm also testified that in July 2016, Bennett informed him that she met a man and was moving to Chicago to get married, and she was in Chicago from July until December.

Storm related additional concerns he had with Bennett. He stated that he observed drug paraphernalia outside of Bennett's home on Father's Day in 2018. He offered into evidence exhibit 30, which was a Nebraska Court of Appeals memorandum opinion affirming the termination of Bennett's parental rights to her eldest daughter in 2014. See *In re Interest of Tabitha B.*, No. A-13-445, 2014 WL 292830 (Neb. App. Jan. 28, 2014) (selected for posting to court website). Exhibit 30 described Bennett's mental health struggles, her drug use, and her lack of progress in

her supervised visitation of her daughter. Storm also testified that there were occasionally unknown men with Bennett when she picked up Ruth, and he was concerned about Ruth's safety.

Following the close of Storm's case, Bennett was allowed to adduce rebuttal testimony from her mother, who was the witness that was unavailable to testify on the first day of trial. Bennett's mother testified that she was a mandatory reporter and was specifically trained to detect abuse. She testified that Bennett was on drugs at the time her parental rights to her eldest daughter were terminated, but Bennett had not been on drugs for 8 years. Bennett's mother further testified that Bennett was not on the adult abuse registry, nothing was ever founded about the allegations of her mental health struggles and drug abuse, and that Bennett was a good mother.

Following trial, the district court found that Bennett failed to demonstrate that a material change in circumstances had occurred, and that it was not in Ruth's best interests to modify the decree. However, the court further found that Storm sufficiently demonstrated that Bennett's parenting time should be supervised and ordered accordingly. Bennett timely appealed.

ASSIGNMENTS OF ERROR

Bennett assigns, restated, that the district court erred in (1) denying her motion to continue trial, (2) modifying her visitation to supervised visitation, (3) raising the interest of child support, (4) accepting prior evidence from Storm but not from her, and (5) "the order altogether."

STANDARD OF REVIEW

A motion for continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014). A judicial abuse of discretion exists if the reasons or ruling of the trial court are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017).

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

ANALYSIS

Bennett assigns five errors on appeal to this court, stating that the district court erred in (1) not granting her motion to continue; (2) granting Storm's request to have her visitations be supervised; (3) raising the interest of child support; (4) accepting past exhibits from Storm, but not from her; and (5) "the order all together. . . . [T]he order doesn't match the findings of the Court." However, she argues only her first, fourth, and fifth assigned errors. Errors that are assigned but not argued will not be addressed by an appellate court. *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005).

Bennett attempted to correct her failure to argue all of her assigned errors in her reply brief. The purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847

N.W.2d 283 (2014). It cannot be used to make arguments that were not contained in an appellant's opening brief because such an attempt is untimely. See *id*. Accordingly, we address only Bennett's first, fourth, and fifth assigned errors.

*Motion to Continue*.

Bennett argued that the district court erred in denying her motion to continue, which she requested because her "expert" witness, her mother, was unavailable to testify on the first day of trial. We find no error in the district court's denial of the motion to continue.

At the beginning of trial, Bennett informed the court that she filed a motion to continue two days prior to trial. Storm's counsel stated that she received a handwritten notification from Bennett the day before trial indicating that Bennett wanted to collect witness affidavits from out-of-town witnesses and planned to travel out of state to visit a family member. The district court denied the motion to continue, stating that the motion was untimely, the case had already been continued once, and the matter had been scheduled for 6 or 8 weeks.

Neb Rev. Stat. § 25-1148 (Reissue 2016) provides in part:

Whenever application for continuance or adjournment is made by a party or parties to any cause or proceeding pending in the district court of any county, such application shall be by written motion entitled in the cause or proceeding and setting forth the grounds upon which the application is made, which motion shall be supported by the affidavit or affidavits of person or persons competent to testify as witnesses under the laws of this state, in proof of and setting forth the facts upon which such continuance or adjournment is asked.

Here, we are unable to determine whether Bennett's motion complied with § 25-1148 because it is not contained in the record before us. However, the failure to comply with the provisions of § 25-1148 is but a factor to be considered in determining whether a trial court abused its discretion in denying a continuance. *Velehradsky v. Velehradsky*, 13 Neb. App. 27, 688 N.W.2d 626 (2004) (proceeding to merits of motion for continuance despite absence of supporting affidavit).

In addition to a party's compliance with § 25-1148, we are to consider three analytical factors when reviewing a trial court's denial of a motion for continuance: (1) the number of continuances granted to the moving party, (2) the importance of the issue presented in the matter, and (3) whether the continuance was being sought for a frivolous reason or a dilatory motive. *Velehradsky, supra*. A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017). See, also, *In re Interest of Azia B.*, 10 Neb. App. 124, 626 N.W.2d 602 (2001) (trial court did not abuse discretion in denying parent's motion to continue because parent was not prejudiced by denial).

Regardless of whether the analytical factors weigh in Bennett's favor, she failed to demonstrate how she was prejudiced by the district court's denial of her motion to continue. Bennett does not indicate what testimony her mother, as an "expert witness" would have provided. In her statement of facts section of her brief to this court, Bennett indicated that her mother held degrees in early childhood education and was a mandatory reporter for child abuse. She claims

that because she was not allowed a continuance she was "not able to present 'her case' to the Court." Brief for appellant at 9. We note, however, that Bennett's mother did testify, albeit in rebuttal, on the last day of the trial.

Bennett's mother testified that she was a mandatory reporter and was specially trained to detect child abuse. She confirmed that she had reported Bennett in the past as a drug user and would do it again. But, she explained, Bennett was not on drugs during the time period relevant to this case and has not used drugs for 8 years. She further espoused that Bennett was not on the Iowa child abuse registry and that she was a good and attentive mother.

Bennett contends that her mother "rebutted all allegations made by [Storm] and his witnesses." Brief of appellant at 9. Therefore, Bennett could not have suffered prejudice by the court's refusal to grant her a continuance because she was able to adduce her desired testimony from her mother on rebuttal. Because Bennett cannot show prejudice by her mother testifying as a rebuttal witness instead of being granted a continuance, we find no abuse of discretion in the district court's denial of her motion to continue.

*Past Evidence Admitted.*

Bennett next argues that the district court erred in admitting evidence offered by Storm of events that occurred prior to the entry of the decree, but denied similar evidence offered by Bennett. We disagree.

Bennett's argument appears to be derived from the following statement from the court during trial:

Does this predate [the prior judge's] decision? And what relevance would this be now? Because I presume [that judge] heard all of this, made his decision. The only issue right now in this case is -- in both your complaint or petition to modify and Mr. Storm's is that -- whether there's been a material change in circumstances from [the] previous order that he entered. And that's all I am going to hear is what has changed since then. And maybe there's a lot, but that's all I'm going to consider is the material change in circumstances since [the prior judge] entered his order, which would have been in -- hold on a second here -- June 7, 2016. Now, if there's something relevant with regard to ongoing, continued, on-again, off-again drug use or something like that, for example, or abuse . . . I'll listen.

Bennett argues that because the district court stated that it was considering only whether a material change had occurred since June 2016, the court erred in accepting exhibit 30, which was an opinion from this court issued in January 2014, affirming the termination of Bennett's parental rights to her eldest daughter.

While we acknowledge the proposition of law that in a child custody modification proceeding, a party must demonstrate that a material change in circumstance occurred after the entry of a prior custody order, see *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020), here, based on the record, exhibit 30 was used to demonstrate that Bennett struggled with drug use and mental illness in January 2014, and continued to struggle at the time of the trial. Therefore, the exhibit fits within the exception carved out by the district court for "something relevant with regard

to ongoing, continued, on-again, off-again drug use or something like that, for example, or abuse." Thus, when exhibit 30 is viewed in the proper context, the district court did not abuse its discretion in receiving and considering the exhibit.

Bennett does not identify any exhibit she offered that was denied by the district court on the grounds that it predated June 2016. From what we can discern from the record, three exhibits offered by Bennett were rejected by the court, exhibits 8, 12, and 26, and none were rejected because they occurred prior to the decree.

Because Bennett argues in another section of her brief that exhibit 8 was improperly rejected, we address her arguments here. Exhibit 8 was a "Request for Child and Dependent Adult Abuse Information" from the Iowa DHS, and included a handwritten note stating "the Central Abuse Registry contains no information on Sarah Bennett." Bennett asserted at trial, and again on appeal, that this exhibit rebutted Storm's assertion that she was on the Iowa Central Abuse Registry. However, the district court properly sustained a foundational objection to exhibit 8 because there was no testimony as to who authored the note or when it was made.

Similarly, Bennett argues in another section of her brief that exhibit 12, a letter purportedly from her psychologist, should have been admitted to show that she did not have mental health concerns. However, exhibit 12 was rejected by the court on the bases of foundation and hearsay. Bennett does not assign error to that evidentiary ruling; therefore, we do not address it.

In sum, the district court did not err when it considered exhibit 30 because it was not offered to demonstrate that a material change in circumstances had occurred since the decree; rather, it demonstrated that Bennett continued to struggle with her mental health issues and drug usage. Moreover, Bennett did not identify any particular exhibit of hers that was denied because it predated the decree.

*General Error.*

Bennett's final assignment of error states: "The court erred in the order all together. I question the courts [sic] competency. If you look at the BOE and look at each exhibit the court is referring to. It will be found that the order doesn't match the findings of the Court." As to this assigned error, Bennett contends that exhibit 33, the petition and protection order from 2017, does not support the court's statement that it demonstrates an individual attempted to strangle her. She also argues that the court erred in finding that exhibits 30, 56, and 57 demonstrate her mental health and substance abuse concerns. We disagree.

Bennett claims that exhibit 33, the petition and order for protection, does not support the court's statement that a male individual attempted to strangle her. Contrary to her argument, in her petition, she detailed two recent incidents of abuse and then stated that this individual had "a perivios [sic] charge of strangulation when he chocked [sic] me 2 years ago." Therefore the record refutes Bennett's assertion.

As stated previously, exhibit 30 is a copy of this court's memorandum opinion in *In re Interest of Tabitha B.*, No. A-13-445, 2014 WL 292830 (Neb. App. Jan. 28, 2014) (selected for posting to court website), and it details Bennett's mental health and substance abuse issues that led to the termination of her parental rights of her older daughter. Exhibit 56 is a September 6, 2017, letter from a neurologist to Bennett's referring physician. In it he states: "It might well be that

psychiatric treatment could be of benefit though I suspect finding a psychiatrist who will accept Medicaid will be a challenge." Exhibit 57 is a September 26, 2017, letter from a psychiatrist to the same referring physician. This psychiatrist diagnosed Bennett with adjustment disorder with mixed anxiety and depressed mood.

While we agree that exhibit 56 does not contain a determination that Bennett suffers from mental health or substance abuse issues, it does suggest that psychiatric treatment may be helpful. The court's reference to these three exhibits was merely that they demonstrated concerns regarding Bennett's mental health and drug use. We find no error in the court's interpretation of these documents. Furthermore, we note that they comprised only one of seven factors upon which the court relied to determine that Bennett's parenting time should be supervised.

Although Bennett does not specifically argue that the district court erred in modifying her parenting time, she does argue that the court "erred in the order all together." Therefore, we briefly review the district court's findings, and conclude that it did not abuse its discretion in modifying Bennett's parenting time to require supervised visits.

The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child. *Ahrens v. Conley*, 5 Neb. App. 689, 563 N.W.2d 370 (1997). The best interests of the child is the primary and paramount consideration in determining and modifying visitation rights. *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001).

A court determines the nature and extent of visitation rights on a case by case basis and may consider many factors and circumstances in each case, such as the age and health of the child; the character of the noncustodial parent; the place where visitation rights will be exercised; the frequency and duration of visits; the emotional relationship between the visiting parent and the child; the likely effect of visitation on the child; the availability of the child for visitation; the likelihood of disrupting an established lifestyle otherwise beneficial to the child; and, when appropriate, the wishes of the child. *Id*. The need for a stable home environment free of unsettling influences is one of the factors to be considered in determining reasonable visitation rights. *Id*. Although limits on visitation are an extreme measure, they may be warranted where they are in the best interests of the children. *Id*.

The court did not specifically state what material change in circumstances it found; however, upon our de novo review, we rely upon Bennett's arrest for domestic violence, the protection order she obtained, the removal of her son for a period of time, and drug paraphernalia that was found outside her residence as sufficient evidence that a material change in circumstances had occurred. The district court specifically found that modifying Bennett's parenting time with Ruth to supervised visitation was in Ruth's best interests based upon her arrest for domestic violence, the presence of drug paraphernalia on her property and her use thereof, Ruth's severe reaction to Bennett as testified to by her caretaker, the removal of Bennett's son for a period of time, the domestic abuse protection order she obtained, Bennett's mental health and substance abuse concerns, and the fact that an adult male was sleeping in the same bed used by Ruth. Based upon these factors, we find no abuse of discretion in the district court's order requiring Bennett's parenting time with Ruth be supervised.

Bennett also argues that the court was biased against her, but she has not assigned this as error. To be considered by an appellate court, an alleged error must be both specifically assigned

and specifically argued in the brief of the party asserting the error. *Bryant v. Bryant*, 28 Neb. App. 362, ___ N.W.2d ___ (2020). We therefore do not address this argument.

## CONCLUSION

The district court did not abuse its discretion in denying Bennett's complaint to modify the decree and granting Storm's amended counterclaim to require Bennett's parenting time to be supervised. We therefore affirm the order of the district court.

AFFIRMED.