IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


MILLS V. ELZNIC


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


TRAE MILLS, APPELLANT,

V.

MIRANDA ELZNIC, APPELLEE.


Filed June 17, 2025.    No. A-24-575.


Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge. Affirmed.

Nicholas R. Glasz, of Glasz Law, for appellant.

Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.


PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Trae Mills appeals from the Lancaster County District Court's order regarding custody, child support, and parenting time for his child with Miranda Elznic. He contends the district court erred in denying his motion to continue trial. Finding no abuse of discretion, we affirm.

## BACKGROUND

Trae and Miranda are the parents of LunaLynn Mills, born in June 2022. On April 21, 2023, Trae, through counsel, filed a "Complaint to Establish Custody and Other Relief," in which he requested that the district court award him sole legal and physical custody of LunaLynn, establish a parenting plan, order Miranda to pay child support, and grant him the right to claim LunaLynn as a dependent for federal and state income tax purposes. On May 24, Miranda, pro se, filed an answer and counterclaim, in which she requested that the court find Trae to be LunaLynn's father, award the parties joint legal and physical custody, order child support in accordance with

- 1 -

the Nebraska Child Support Guidelines, and grant her any applicable tax deductions or credits under federal and state law.

On September 26, 2023, Trae's attorney filed a motion to set the case for trial; a pretrial conference memorandum was filed on October 25. One day of trial was requested. On October 27, the district court issued a pretrial order setting trial for "1/2 – 1 day" the week of March 4, 2024. Miranda was given 30 days to file a pretrial memorandum. The pretrial order also stated that "[m]otions to continue trial must be accompanied by an affidavit of the party stating the reasons for the request" and "will be closely scrutinized and granted only for good cause shown."

On January 2, 2024, an attorney entered an appearance as attorney of record for Miranda. Approximately 1 month later, Miranda's pretrial memorandum was filed. On February 15, Miranda's attorney filed a motion to continue trial, claiming a conflict with the March 4 trial term due to another case scheduled to begin at that time. The motion indicated there was no objection from Trae's attorney. The court granted Miranda's motion and continued trial to July 9.

On March 8, 2024, Miranda filed a "Motion for Temporary Orders" seeking temporary legal and physical custody of LunaLynn. The district court entered a temporary order on April 5. The parties were awarded temporary joint legal custody of their daughter, and Trae was awarded temporary physical custody. The court also established a 9/5 parenting time schedule, with Trae having 9 days and Miranda having 5 days each 14-day period. Miranda's parenting time was ordered to begin at 11 a.m. every other Wednesday and end at 2:30 p.m. the following Monday.

On June 11, 2024, Trae's attorney filed a motion to withdraw as counsel, which included a notice of hearing with a link to the "Zoom Meeting." The hearing took place as scheduled on June 27, but Trae did not attend. Trae's attorney made the following argument in support of his motion to withdraw:

> [W]e have not previously requested any continuance of the trial but it has been continued once before. . . . So all was going well with this case until, I don't know three or four weeks ago when my client prompted me to file this motion. . . . I have a fee agreement with my client and it requires certain things on his part and he has decided not [to] comply with those things. And so we're sideways on our -- my -- my contract with him. And I promptly told him when he said that -- this was several weeks ago. That okay if that's the way it's going to be I will file a Motion to Withdraw. I encourage you to or advise you to get other counsel as soon as possible. One of [the judge's] requirements . . . is that we, you know, if we're ever going to ask leave to withdraw we gotta make sure we -- we've provided our client with . . . the pretrial order which I did quite a while ago. . . . And so I don't feel Judge under the circumstances that I . . . can continue to represent my client. So I'm asking leave of court to withdraw.

Trae's attorney further stated:

> I did notify my client that I was filing this motion. I noticed him on it and I did tell him that if this happens, you know, the trial is -- is currently scheduled so please, you know, get your own counsel in case . . . I'm [given] leave to withdraw. He never did respond back to me to -- to not go forward with this. And . . . he's had an opportunity to -- to comply with the fee agreement but he's not done that.

Miranda did not object to the motion to withdraw, and the district court entered an order granting it that same day. The order stated that the trial "shall remain [as] scheduled on July 9, 2024." A "Certificate of Service" indicates that a copy of the June 27 order was sent to Trae "via e-mail" to his email address.

On July 8, 2024, Trae, now pro se, filed a motion to continue the trial. It was a basic form document that only indicated a request for a continuance with no further explanation. Trae did not attach a supporting affidavit to the motion. The district court heard the motion on July 9, prior to the commencement of trial. The following colloquy took place:

> THE COURT: And what efforts have you made to hire counsel since [former counsel] withdrew?
>
> [Trae]: I talked to a couple different ones but obviously I couldn't save up for it so --
>
> THE COURT: So how much time do you need to hire another lawyer if I'm inclined to give you that time?
>
> [Trae]: Probably two or three months.
>
> THE COURT: Okay.
>
> [Trae]: Max.
>
> THE COURT: So that's to[o] much time. The case [has] already been on file for over a year. So I'm not going to give you that much time.
>
> [Trae]: Does a month work?
>
> THE COURT: I'm sorry.
>
> [Trae]: Does a month work then?
>
> THE COURT: First let's -- [counsel for Miranda,] what's your position on the continuance . . . ?

Miranda's attorney objected to the continuance since trial had been set "since February of this year," there was no affidavit attached to the motion to continue as required by local rules, and Trae was not present at the hearing on his attorney's motion to withdraw. In denying the motion, the court stated that the case had been on file for "a very long time." It further explained:

> You were not present at the hearing at which [former counsel] was given leave to withdraw. You could've appeared at that time. You could've objected and at that time you would've been advised that the trial is going to go forward as scheduled. My pretrial order of which you were provided a copy sets forth what you need to do if you want to ask the Court . . . for a continuance. You have not complied with that either.

The case then proceeded to trial, with the district court initially asking Trae what he was asking the court to decide. Trae responded that, although he initially sought sole legal and physical custody of LunaLynn, he was now amenable to having "final say and us sticking on" the existing 9/5 parenting time schedule. Miranda, through her attorney, requested joint legal and physical custody, a 7/7 parenting time schedule, and that Miranda have "final say." The court asked Trae whether he had submitted a proposed parenting plan and child support worksheet as required by the pretrial order. Trae stated that he had not.

When given the opportunity to present evidence, Trae expressed uncertainty about how to introduce exhibits. In response, the district court advised him that, although he was representing himself, he would be held to the same standards as an attorney and could not be given guidance. Following this, Trae asked whether he could use his phone to show evidence or send evidence via email. The court explained that any item offered into evidence would remain in the court's custody and that email submission was not permitted. The court further stated, "Today is the trial. You needed to come forward with your evidence today." Trae then indicated that he had Miranda as a witness but once again expressed uncertainty about how to proceed.

Ultimately, Trae stated that he "[had] no evidence." At that point, the district court turned to Miranda's attorney, who moved to dismiss Trae's complaint for failing to meet his burden of proof. The court granted her motion and dismissed the complaint.

Miranda then presented evidence to support her counterclaim. She began by calling Trae as a witness. Trae testified that he and Miranda had been in a romantic relationship that resulted in the birth of LunaLynn in 2022. He stated that he was present at LunaLynn's birth, signed her birth certificate, and signed an acknowledgement of paternity.

Miranda then testified in her own behalf. Miranda stated that she was living with her "mom and stepdad," along with an older daughter (not part of the present action) and LunaLynn. She confirmed that Trae is LunaLynn's father and that the three of them lived together until January 2023. At that point, her relationship with Trae ended, and she moved out. She left LunaLynn in Trae's care because she "didn't know [her] rights," and Trae did not want her to take LunaLynn. Miranda explained that from the time she moved out in January 2023 until the temporary order was issued in April 2024, she had limited contact with LunaLynn because Trae told her that any visitation would have to occur "under his supervision."

Miranda further testified that since the temporary order took effect, she and Trae have had "really good" communication "[f]or the most part." She believed a 7/7 parenting time schedule would be in their daughter's best interests but that she was requesting "final say" due to Trae's "controlling behavior." Additionally, Trae sent her a text message the week before trial, urging her to "not go forward" with the case. The text was received into evidence as exhibit 6 and states:

> Hey, I'm not trying to start anything or make you feel bad. I do think that right now you should drop the Court case and let me have what I want with Luna. . . . I know you're struggling with money. I know you need a new place. I don't want to cut you out of Luna[']s life completely. Financially this is a better choice for you. Pride[-]wise it's a better choice for you to say we came to an agreement rather than a judge gave me majority everything. I know you want to please your family and I know they aren't happy with what you have. Let's settle this outside of court? If not that['s] fine. I just figured we've been getting along. Will be a bonus for both of us. You are not a bad mom for giving Luna her best possible future until you get on your feet.

> At this rate, both girls don't have a stable home. I have more screenshots and stuff about our interactions in my favor, and you violated the court order a couple of times. Our judges prefer joint and already gave me the majority. If you decide to withdraw now, it doesn't have to be court ordered any less for you. Give me what I want, and I'll help you out. If the judge gives me what I want legally, I don't have to do anything more for you.

The district court also received into evidence Miranda's proposed parenting plan, proposed financial plan, and a completed child support worksheet.

When given the opportunity to cross-examine Miranda, Trae asked if he could clarify a point regarding the text he sent her the week before trial. However, he ultimately chose not to ask any questions. Trae was then asked to present evidence in response to Miranda's counterclaim. He stated that he did not have any evidence "[o]ther than what [he had] already proposed," and the following colloquy took place:

> THE COURT: And when you're referring to what you proposed what are you referring to?
>
> [Trae]: This stuff that [former counsel] had put in.
>
> THE COURT: So ---
>
> [Trae]: I'm not sure.
>
> THE COURT: I don't have any evidence from [former counsel]. [He withdrew] as your attorney.
>
> [Trae]: Okay. Then no.
>
> THE COURT: Cause now's the opportunity to offer evidence. He hasn't had [the] opportunity to offer evidence until today.
>
> [Trae]: Everything I would have isn't like in papers here so -- [.]

The trial concluded after both parties gave closing arguments.

On July 10, 2024, the district court issued an order addressing custody, child support, and parenting time. The court adopted Miranda's proposed parenting plan and financial plan. The parties were granted joint legal and physical custody of LunaLynn, and Miranda was given "final say" if the parties are "unable to agree on a major decision." The court also implemented a 7/7 parenting time schedule and ordered Trae to pay $45 per month in child support.

Trae appeals.

## ASSIGNMENTS OF ERROR

Trae, represented by new counsel, assigns that the district court erred in (1) denying his motion to continue and (2) failing to give him sufficient time to obtain counsel. We will consider these assigned errors together.

## STANDARD OF REVIEW

Generally, a motion for a continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001).

## ANALYSIS

Trae argues that the district court erred in overruling his motion to continue trial. He contends that "it is unreasonable to think that [he] would be able to obtain counsel in a short period of time and [that] counsel would be able to prepare for trial in a short period of time." Brief for appellant at 11. He further claims that "[t]he record does not show that [he] was at fault in the loss of his previous counsel[]" or that he was "dilatory in trying to obtain new counsel." *Id.*

- 5 -

Miranda argues to the contrary. She contends that the record reflects that Trae "sought the continuance with a dilatory motive." Brief for appellee at 7. She points out that Trae's former counsel withdrew because of "nonpayment" and that by the first day of trial, Trae was still in a position of not having funds to retain counsel. *Id*. Miranda contends that "after failing to pay his attorney," Trae "attempted to coerce her to dismiss her complaint a week before the trial." *Id*. She claims that this "belies his statements he was attempting to secure an attorney," and when Miranda "would not succumb to his demands, he reverted to request a continuance." *Id*. We agree that a dilatory motive for the continuance is supported by the record, as discussed next.

There are three analytical factors that must be considered when determining whether a court abused its discretion in denying a request for a continuance: (1) the number of continuances granted to the moving party, (2) the importance of the issue presented in the matter, and (3) whether the continuance was being sought for a frivolous reason or a dilatory motive. See, *Weiss, supra*; *Velehradsky v. Velehradsky*, 13 Neb. App. 27, 688 N.W.2d 626 (2004).

Trae cites to *Weiss, supra*, in support of his position; however, we find that case to be distinguishable. In *Weiss*, the Nebraska Supreme Court found that the district court abused its discretion in denying the husband's pro se motion for a continuance filed 10 days after his attorney was given leave to withdraw from the case and 16 days prior to the commencement of trial. The husband had filed a written motion to continue outlining his efforts to retain new counsel. The Supreme Court noted that it was the husband's first motion to continue, the trial involved the constitutionally protected relationship between parent and child, and there appeared to be no intent on the husband's part to unnecessarily delay the proceedings.

In the present case, as in *Weiss*, both the first and second factors set forth above support granting Trae's motion to continue trial. The record reflects that Trae had not requested any prior continuances and the case involves the constitutionally protected relationship between a parent and a child. However, in applying the third factor -- whether the motion to continue was filed for a frivolous reason or with a dilatory motive -- we find the instant case to be distinguishable from *Weiss*. The timing of Trae's motion is significant. Despite knowing of his counsel's intent to withdraw at least by June 11, 2024, when the motion to withdraw was filed, Trae nevertheless failed to file for a continuance until just 1 day before trial. At the June 27 hearing on the motion to withdraw, Trae's former counsel informed the district court that he told Trae "several weeks ago" about his intent to withdraw due to Trae's failure to comply with their fee agreement. He also told Trae that trial was "currently scheduled" and advised him to "get other counsel as soon as possible." By the time Trae's former counsel filed the motion to withdraw on June 11, there had already been discussions with Trae about his counsel's intent to file the motion. The court granted the motion on June 27, and the record reflects that Trae received that order via email on June 28. The order stated that trial "shall remain scheduled on July 9, 2024."

Importantly, as pointed out by the district court, Trae failed to appear at the June 27, 2024, hearing on the motion to withdraw. As explained by the court, had Trae been present at that hearing, he would have been informed that trial was "going to go forward as scheduled" and he could have objected to the motion to withdraw at that time. The record shows that on June 11 a copy of the motion to withdraw and notice of hearing was emailed to Trae. Despite having over 2 weeks' notice of the pending hearing, Trae elected not to be present at the hearing. Trae provided

no explanation for his absence in his motion to continue, nor did he provide any explanation on the morning of trial.

Further, when the district court asked what efforts Trae had made to hire an attorney, Trae responded that he had "talked to a couple different ones" but that he could not "save up for it" and he needed "two or three months." He provided no details about who he had spoken to or when he had done so, nor did he explain how waiting any longer would remedy his inability to "save up for it." Further, as pointed out by Miranda, Trae appeared to be more focused on pressuring Miranda to "drop" the case than securing a new attorney. As discussed above, Trae sent Miranda a text message the week before trial, urging her to drop the case and allow him to "have what [he] want[s] with Luna." He emphasized Miranda's financial struggles and suggested settling outside of court as a better option. Trae also referenced Miranda's alleged past violations of court orders and claimed that "[o]ur judges prefer joint and already gave me the majority." "Give me what I want, and I'll help you out." It appears that Trae was more focused on pressuring Miranda to avoid court proceedings than on securing an attorney to file a proper continuance.

The district court also observed that Trae had not complied with the court's pretrial orders regarding what was necessary to request a continuance. The court's October 27, 2023, pretrial order, as well as its February 16, 2024, amended pretrial order, both expressly set forth the procedural requirements for requesting a continuance. Specifically, the pretrial orders stated that "[m]otions to continue trial must be accompanied by an affidavit of the party stating the reasons for the request" and "will be closely scrutinized and granted only for good cause shown." Trae was on notice of this requirement, as confirmed by his former counsel. Despite this notice, Trae filled out a form document stating only that he was requesting a "continuance." No explanation was provided in the motion, nor was there a supporting affidavit attached to his motion or otherwise filed.

Neb. Rev. Stat § 25-1148 (Reissue 2016) governs the requirements for requesting a continuance. Section 25-1148 requires that the motion be in writing and supported by an affidavit. Although it is not determinative, an appellate court considers whether the moving party complied with § 25-1148 in determining whether the trial court abused its discretion in granting or denying a motion to continue a trial. *State on behalf of Keegan M. v. Joshua M.*, 20 Neb. App. 411, 824 N.W.2d 383 (2012). An appellate court will assess motions to continue a trial that do not fully comply with the rule governing requests for continuance in the broader context of the parties' substantial rights. See *id.* Therefore, while not dispositive, the district court properly considered Trae's noncompliance with the procedure for requesting a continuance when denying his motion to continue.

In considering the broader context of the parties' substantial rights, there is no question that the constitutionally protected relationship between parent and child is a substantial right. However, while Trae argues that the denial of the continuance resulted in him being "denied a fair opportunity to present his case, resulting in a clear prejudice against him," brief for appellant at 9, he provides no explanation as to how he was denied a fair opportunity to present his case or how he was prejudiced. When asked by the district court what he wanted, Trae responded only that he wanted to maintain the 9/5 parenting schedule set forth in the parties' temporary order, and that he wanted to maintain having the "final say" when the parties could not agree on significant decisions related to LunaLynn. Although the district court did grant Miranda "final say," the change in the

sharing of parenting time from 9/5 to 7/7 was not a significant change from what the parties had been doing since the temporary order. It gave LunaLynn the opportunity to be with each parent equally and only gave Miranda 2 more days per 14-day period than she had before. And despite having opportunities to do so, Trae presented no evidence as to why equal parenting time would be detrimental to LunaLynn or why it would not be in her best interests. Any such information would have been known by Trae without the assistance of an attorney. Trae also had an opportunity to question Miranda regarding her request and justification for awarding her the "final say," but he elected not to do so. Trae was provided opportunities to dispute Miranda's allegations regarding his controlling behaviors but he neither questioned her, nor presented his own testimony regarding the same. The record does not support that Trae was denied a fair opportunity to present his case.

Based on the record before us, we cannot say that the district court abused its discretion in denying Trae's motion to continue trial.

CONCLUSION

For the foregoing reasons, we affirm the district court's July 10, 2024, order.

AFFIRMED.